### HEIN v. WESTINGHOUSE AIR BRAKE CO.

(Circuit Court, N. D. Illinois, E. D.   February 23, 1909.)

No. 28,067.

1. COURTS (§ 341*)—FEDERAL COURTS—CONFORMITY TO STATE PRACTICE—DEGREE OF CONFORMITY.

   The conformity statute (Rev. St. § 914 [U. S. Comp. St. 1901, p. 684]) requires the federal courts to conform generally, and as near as may be, to the practice, pleading, forms, and proceedings of the state courts; but they may, by standing rule, change subordinate provisions which they deem unsuited to their procedure, and may in their discretion reject collateral or subordinate provisions of the state practice, pleadings, or forms, which tend to obstruct the administration of justice in any particular case presenting unusual features, without making any standing rule.

   [Ed. Note.—For other cases, see Courts, Dec. Dig. § 341.*]

2. COURTS (§ 347*)—FEDERAL COURTS—CONFORMITY TO STATE PRACTICE—PLEADING.

   Pleadings in a federal court in an action at law, which are not in the form of those required by the state practice, but which are substantially a compliance with it, are good.

   [Ed. Note.—For other cases, see Courts, Cent. Dig. § 921; Dec. Dig. § 347.*

   Conformity of practice in common-law actions to that of state court, see notes to O'Connell v. Reed, 5 C. C. A. 594; Nederland Life Ins. Co. v. Hall, 27 C. C. A. 392.]

At Law.   On demurrers to replications.

See, also, 164 Fed. 79.

David S. Wegg, for plaintiff.

Buell & Abbey, J. Snowden Bell, and Thomas W. Bakewell, for defendant.

SANBORN, District Judge.   Declaration in covenant, filed December 21, 1905, upon a sealed contract, and breaches assigned.   The contract is attached as an exhibit, and purports to have been made November 24, 1902, between plaintiff, of the first part, and George Westinghouse and the defendant company, of the second part.   It recites that George Westinghouse is the owner of certain patents on friction draft and buffing apparatus, and that the defendant corporation is the sole licensee of these patents.   It is further recited that Hein has made certain like inventions and applied for patents thereon, and it is desired by the second parties to acquire the exclusive right to the Hein inventions, and patents to be issued therefor.   Therefore the parties agree as follows:

Agreements by Hein: Grant to Westinghouse, and through him to the company, of such exclusive rights.   Should Hein acquire any

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

inventions relative to friction draft and buffing apparatus, he will at once disclose them to Westinghouse, and on demand 'execute to him the necessary agreements to bring them within the contract.

Agreements by second parties: To pay 25 cents royalty or license fee upon each friction draft and buffing apparatus they shall manufacture and sell during the term of the agreement, of whatever construction, and render to Hein quarterly accounts on the 1st of January, April, July, and October of each year, or within 30 days thereafter, statements showing the number of said articles so made and sold, with payment for the amounts shown to be due him. Westinghouse shall develop the inventions to bolster springs, in which case Hein shall convey to him the legal title to the patents obtained, with a provision for reconveyance upon the termination of this agreement, and if he does not do so Hein may utilize the inventions for bolster springs. Second parties shall defend infringement suits, and in case of infringement by others, they may join the owners of the legal title in any infringement suit, at the expense of second parties. If a patent suit is begun against second parties for infringement by the sale or use of said devices, and an injunction is granted and sustained on appeal, this contract may be declared void at the option of said Westinghouse. The contract is to continue 17 years from January 1, 1903.

The declaration alleges that defendant complied with the contract from January 1, 1903, to July 1, 1905, and in July, August, and September, 1905, sold 40,000 of the apparatus made by it, and on October 31, 1905, owed plaintiff $10,000 thereon, which it failed and refused to pay, whereby the covenant was broken. Shortly after suit was brought the second parties brought a suit in equity in this court against Hein for the rescission and cancellation of the contract, on the ground that Hein was not the real inventor of the apparatus referred to, which was dismissed by the court because prematurely brought, and the dismissal affirmed on appeal. Westinghouse v. Hein, 159 Fed. 936, 87 C. C. A. 142. The history of the course of Hein's applications through the Patent Office is fully stated in the opinion of the Circuit Court of Appeals.

Upon the bringing of the equity suit this action was by agreement held in abeyance until the other was finally decided, when the defendant filed 22 pleas to the declaration. Thereupon the plaintiff, desiring to raise numerous defenses to the pleas, conceived that, in view of the intricacy of the facts and their variety and voluminous character, it would conduce to brevity and simplicity, and avoid undue and vexatious prolixity, if he might be permitted to plead the facts relied on by the plaintiff to meet the defenses set up in the pleas once for all, without being required to repeat them in each replication. After hearing the motion an order was made allowing plaintiff to reply to two or more pleas by one replication, file two or more replications to the same plea, reply several matters to one or more pleas, reply generally by the traverse de injuria, include therein two or more pleas, and to make a single statement of facts without the necessity of repeating it in any replication; but the defendant should not be prejudiced by such change of form, nor its rights affected, and it might demur, plead, or otherwise object in any manner, except to raise formal objections justified

by the order, to the same extent as if such order had not been made. Hein v. Westinghouse Air Brake Co. (C. C.) 164 Fed. 79.

From the opinion in the Court of Appeals in the equity case, and the general replication or statement of facts filed under the order, it appears that Hein applied for patents on his inventions, sold them to Westinghouse by the contract sued on, was met in the Patent Office by an interference with Shepard, which was decided in Shepard's favor, a patent issued to Shepard and bought in by Hein, and finally a patent issued to Hein. Assuming this to present the real state of facts, the defendant, in order to make any defense, must show that it did not make the contract, or that for some reason it is no longer bound by it. This it has done by pleading non est factum; that Hein did not invent or own the inventions; that he made a covenant of warranty of quiet enjoyment and broke it; that he covenanted to prosecute his applications with effect, and obtain patents, but did not do so; that he covenanted to do this within a reasonable time, but failed so to do; that he made a covenant of title to make the grant, and broke it, and covenanted that the inventions had practical utility, but they did not.

Assuming that the general replication states facts, and that it is correct in form to meet the pleas, it will be seen that the latter have no apparent merit. Westinghouse bought certain inventions, agreeing to pay a certain sum for them every three months. These payments were continued until October, 1905, but stopped on the ground that the interference proceeding had been decided against Hein. But the Court of Appeals held that Hein was not bound by that decision, but might still prosecute his applications. He did so, obtained patents, purchased Shepard's patent, and thus obtained everything he agreed with Westinghouse to sell. The defendant has thus obtained all it contracted for, all it was paying for up to October, 1905, and its pleas of want of title in Hein, warranty of quiet enjoyment and title, and want of utility, as well as the plea of non est factum, are fully met.

Plaintiff filed a replication containing the general statement of facts authorized by the order, concluding with a verification, and a number of special replications designed to meet the several pleas. Defendant has demurred specially to all the replications, on precisely the same grounds as if the order authorizing such general replication had not been made; and its attorney has without objection reargued the question, decided on the motion, as to the power of the court to make the order. He insists that the conformity act has been construed to be mandatory in compelling the federal courts to adopt in their entirety all local rules for reaching an issue in the pleadings, unless they provide otherwise by standing rule. They must adopt all such rules, whether principal or subordinate. Not only must the common-law system in its general scope be adopted in Illinois, but every one of its subordinate rules must also be followed, and the federal courts are powerless to change or relieve against a single one of them, unless they make a general standing rule relating to one or more of such subordinate provisions. In the absence of such a rule they cannot, it is argued, in any particular case, no matter how great the necessity for that case, and no matter how little the necessity for a general standing rule, re-

lieve against the burden of any technical, formal provision, which will make prolixity, confusion, and needless expense in the particular case, but which, in the great majority of cases, should not be in any way changed.

Under the statute and decisions the following rules may be stated: The conformity act (Rev. St. § 914 [U. S. Comp. St. 1901, p. 684]) provides that in cases at law the practice, pleadings, and forms shall conform, as near as may be, to the practice, pleadings, and forms in like causes in the state courts. (1) The practice must conform, except as to matters covered by Congressional legislation, matters of jurisdiction, substituted service of process, charging juries, other matters relating to the personal administration of the judge, joinder of legal and equitable remedies, actions in rem, etc. (2) The federal courts may, by standing rule, change subordinate provisions which they deem unsuited to their procedure. (3) In their discretion they may reject collateral or subordinate provisions of the state practice, pleadings, or forms, which tend to obstruct the administration of justice. This they may do in a particular case, presenting unusual features, without making any standing rule. They cannot reject the local system as a whole, or in any substantial part; but they may dispense with matters of technical form, not affecting substantial rights or operating to the prejudice of a party. They cannot change the local system designed to produce an issue of law or fact (Railroad v. Horst, 93 U. S. 291, 23 L. Ed. 898); but they are not bound to slavishly follow subordinate technical requirements of form, when justice will be subserved by departing from them.

The order of September 25, 1908, falls within the third class. It affects no substantial right, and no one is prejudiced by it. It relates to form only. Under that order a general replication to all the special pleas, denominated a "replication," concluding with a verification, and signed by the plaintiff's attorney, has been filed, for the purpose of stating once for all the facts on which the plaintiff relies, and which, by reference, is incorporated as a whole into 17 separate special replications, setting up estoppel, ratification, splitting causes of action, res judicata, etc. This general statement or replication is not in technical form. It does not use the approved verbiage of the preamble or conclusion always found in a common-law replication; but it is substantially a replication of all the facts claimed by plaintiff to be material to answer the pleas. It is true that it does contain some legal conclusions, and some argument; but it is not difficult to separate these from the facts pleaded. In substance and effect it is a sufficient replication, though not so in form.

The chief objection raised by defendant's attorney is that the form of pleading allowed by the order casts upon him the onerous burden of picking out from the long statement of facts contained in the general replication the issuable facts, and then pleading a multitude of rejoinders, each of which, as he thinks, must be single, and not double. The trouble is that the case has a history, long and intricate, in its journey through the Patent Office, the chancery side, and the law side, and it was for that reason that the order was made, to prevent unneces-

sary repetition and complication. Defendant's attorney may traverse, or confess and avoid, and he may plead double, if he desires to do so. The salient facts are not difficult or complex. Hein is alleged to have covenanted to license Westinghouse in the use of certain inventions, and that the latter covenanted to pay a certain sum therefor. This allegation has been traversed by the plea of non est factum, and issue joined by the similiter. Assuming that these covenants were made, the main questions are whether Hein discovered the inventions sold and thus had title to them, whether he obtained patents for them, whether he fortified his title by acquiring the interfering invention, so that Westinghouse actually got all he bargained for, and whether Hein obtained the patents within a reasonable time. It will be easy enough to develop issues on these questions, or others deemed material, by rejoinders denying or avoiding the special replications, and such allegations of fact, not of law or argument, as support them.

Pleadings not in the form of those required by the state practice, but which are substantially a compliance with it, are good. Lewis v. Gould, 13 Blatchf. 216, Fed. Cas. No. 8,324. In Erskine v. Hohnbach, 14 Wall. 613, 20 L. Ed. 745, common-law forms were used in a code state, and the Supreme Court applied common-law tests of sufficiency, paying no attention to the requirements of the local practice.

A memorandum is filed herewith, directing the entry of an order sustaining some of the demurrers and overruling the rest.